## Case No. 10,913.

### PELTON et al. v. WATERS et al.

[1 Ban. & A. 599; 7 O. G. 425; 21 Int. Rev. Rec. 125; Merw. Pat. Inv. 674.][1]

### Circuit Court, S. D. Ohio. Dec., 1874.

INTERFERING PATENTS — PRESUMPTION AS TO PRIORITY—PATENT GRANTED ON SECOND APPLICATION—WHAT IS INVENTION.

1. Where there are two interfering patents, the patentee of the invention described in the patent of earlier date, is entitled to the presumption of priority and novelty.

2. If between the first and second application, by an inventor, for a patent. he has manifested an actual intention to abandon the first, the patent granted upon the second application, will have relation to the time of the filing of that application only; the intention manifested by the patentee, to abandon the first, will sever the connection between the two applications.

3. W. and T., having filed applications for patents showing substantially the same device, at the respective dates March 31, 1868, and April 21, 1868, were both rejected. T. persisted in his claim, and upon appeal, secured his patent; while W. amended his application, excluding from his claim the common device, and thus, without appeal, obtained a patent of narrow scope. Subsequently learning of T.'s patent, he filed a second application, broad enough to include the device previously omitted, and in the consequent interference proceedings with T., was adjudged the prior inventor, and thereupon obtained a patent for the invention previously patented to W.: Held, in a suit brought by T. against W., for infringement, that W.'s second application was the commencement of a new proceeding, to which alone the patent granted in pursuance of it. relates; and, therefore, that said second application being subsequent in date to T.'s patent, the presumption as regards priority of invention was with T.

4. The accidental making of an improved article in a single instance, without knowledge on the part of the producer of how it was accomplished, or how to make another like it, is not invention.

[Cited in Boyd v. Cherry, 50 Fed. 283.]

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. Merw. Pat. Inv. 674, contains only a partial report.]

---

[2] [From 16 N. B. R. 268.]

5. Letters patent [No. 79,279] for "improvement in lubricators," granted to Hiram Taylor, June 23, 1868, *held* valid.

Gardner Waters filed an application for letters patent for an "improvement in lubricators," March 31, 1868. On the 21st of April. 1868, Hiram Taylor made an application for a patent, for substantially the same improvement. Both applications were rejected by the examiner. Waters narrowed his claim, and thereupon received a patent of limited scope; but Taylor persisted in his claim, and, upon appeal, secured his patent, which was issued to him June 23, 1868.

When Waters learned that a patent had been issued to Taylor, with a "broad claim," he filed a second application, inserting therein a claim for the invention substantially as covered by the Taylor patent, and demanded an interference, which was granted him; and, upon the final appeal to one of the judges of the supreme court of the District of Columbia, he was adjudged the prior inventor; and letters patent were accordingly issued to him June 29, 1869. The present suit, under the Taylor patent, was instituted November, 1868; complainants' testimony was duly taken after the issue was joined.

In December, 1869, defendants filed an amended and supplemental answer, claiming that Waters was the first inventor, and setting up the interference decision. Issue was joined upon this answer, and testimony for defendants, and rebutting proofs for complainants [William W. Pelton and others], taken and filed in 1870. [The hearing was had at the October term, 1874.] [2] At the hearing, the defendants objected to a certified copy of an application for a patent made by the complainant Taylor, in September, 1867—which it was claimed, described the device in controversy—on the ground that the copy of the application referred to drawings as being a part of the original application; no drawings, however, being attached to the copy. [The objection was sustained by the court.] [2]

Reuben Tyler, for complainants.
E. W. Kittridge, for defendants.

Before EMMONS, Circuit Judge, and SWING, District Judge.

EMMONS, Circuit Judge. The patent of the complainant, Taylor, antedates that of the defendant, Waters, and he is entitled to the presumption that his invention is novel. The presumption is of importance only where the testimony is conflicting, and any considerable doubt is involved as to who is the first inventor. It is of but little consequence in this case. It has, however, been much argued. The defendants insist that Waters' application was made earlier than that of Taylor, and, therefore, his patent is to have relation to the date of its filing. As a gen-

eral rule. this is undoubtedly true. We do not intend to question, or even qualify, any of the cases on the subject, which we recently considered and applied in the case of the Goodyear Dental Vulcanite Co. v. Willis [Case No. 5,603]. These judgments assert several exceptions to the application of the rule.

If, intermediate the first and second application, the patentee manifests an actual intention to abandon the first, his patent will have relation to the last one only. His actual intention severs the proceeding. The law deems the first application terminated, and as bearing no relation to the patent, which rests solely on the last one. A withdrawal of a first application, and the reception of the fee paid back from the department under the statute, is also a severance of the proceedings. The application so withdrawn is not deemed part of any proceeding, under a subsequent proceeding for a patent. These are but illustrations of exceptions to the general principle, which deems the first in a series of applications for a patent, as that upon which a patent depends. We think the case before us comes within the reason of these exceptions. Under the first application of the defendant Waters, he actually received a patent, after having amended his specifications, so as to exclude the present device. We think this action wholly terminated the first proceeding. It was ended in the accomplishment of its object. The decision of the department was acquiesced in, and its final judgment obtained. The subsequent application, in such circumstances, must be deemed the commencement of a new proceeding, and as that alone upon which the patent granted in pursuance of it depends. This last application was subsequent to that of complainants' patent; and, as they are both for precisely the same device, the presumption is in favor of priority of invention on the part of the complainant Taylor.

He testifies that in the fall of 1866, he cast an impervious joint upon the neck of a bottle. He proves his statement by a blacksmith, who came to present an account, and saw such a bottle in his shop; and his brother testifies that he, also, saw it at a subsequent period. If his rights depended upon our adopting the theory that he completed his invention at that time, by such means, we should dismiss the bill. Positive as the testimony is, the fact of success at a period so early is too inconsistent with his subsequent conduct, manifestly evincing an entire ignorance of the thing we think he subsequently invented. Such singular stories are incident to nearly all these controversies in reference to priority of invention. Parties frequently prove the making of some fixture which is destroyed; of some model which is lost; and some conversation which has never been acted upon sufficiently early to antedate his opponent. We could give many reasons why we fear the history of this bot-

2 [From 7 O. G. 425.]

tle finds its origin in the fact that the defendants, in their testimony, place his discovery about a year earlier than we think it was invented by any one. Far more satisfactory and convincing, is the proof that the complainants, in the latter part of 1867, and subsequently, were making and vending in large quantities, the patented device. The defendants' agent, Pelton, who was selling at that time a different article for the defendants, in the fore part of 1868, bought of the complainants a number of lubricators of the kind in question, to supply the place of an inferior article, manufactured by the defendants, which they had sold for them, and which, on account of their leaking, had to be supplied by a better.

It is needless to recapitulate the proofs—they are abundant and uncontradicted—to show that from the latter part of 1867, forward, the complainants were in the full manufacture and sale of the patented device. There is no satisfactory evidence of its invention before that date. It is with this concession that we grant him a decree. To overcome this case, and prove the defendant to be a prior inventor, he himself swears that, in the latter part of 1866, he too made an impervious joint upon the neck of a glass globe, tested it with steam, and placed it upon the cross-head of an engine, where it worked successfully, as he proves by Henderson, the colored engineer, for three successive years. The witnesses Reynolds and Phillips, with more or less confirmation, sustain Henderson. We are absolved from the duty of contrasting this proof, with other unquestioned facts in the case, for the purpose of ascertaining whether it was not in 1867, instead of 1866, that this successful lubricator was made, because the defendant Waters' own statement as a witness renders it wholly unnecessary. He says, most explicitly, that though he did succeed accidentally in making one close joint upon the neck of that single globe, he tried in vain for five months thereafter to make another. He says he broke many bottles in the attempt; that he did not even partially succeed, but in a single instance, during the five months; and that one leaked so badly it was unfit for use. It was not until 1868, that he learned how to produce a close joint; and, at a time considerably after complainants were publicly manufacturing them. The accidental making of this one joint, without any knowledge on the part of the producer, of how to accomplish it, with utter inability on his part to make another like it, is not invention. His ignorance was so complete, concerning the mode of its production, that he himself swears, he not only did not attempt their manufacture, but laid aside a large stock of material, during this period, for the making of a wholly different article. These he did manufacture, and put upon the market, through Starr & Pelton, his agents. He not only had not invented a close joint, but he had so little hope of success, that he prepared extensively for the making of a different and inferior lubricator. In these circumstances, a single fortuitous success is by no means invention, within the protection of the patent law. He not only did not, and could not, give it to the public, but he did not possess it himself. It might as well be claimed that if he should be carrying three bottles in a basket, which being accidentally broken, their contents, mixing in unknown quantities upon the earth, makes some useful compound, and he should enter upon a series of experiments for the purpose of ascertaining, if possible, its relative proportions; but, does not succeed in doing so until after another has successfully completed the discovery, he could antedate him by proof of the casualty by which he saw the same thing produced. When the defendant saw the first bottle on the cross-head of the engine, without any knowledge of the mode by which he could make another, he stood in no other relation to it, as far as the patent law is concerned, than if it had been placed there by somebody else.

It is not necessary to consider the many other facts in the case, which tend to show that Waters, in fact, obtained his knowledge of the device from Taylor. We refer to a few of them only, as illustrating the rightfulness of the principle we apply to the defendants' testimony. When Pelton, their agent for the sale of a different manufacture, as late as 1868, presented the defendants with one of the complainants' lubricators, they pronounced it impracticable. They said they could not be profitably made, and that Pelton did not know how many bottles must necessarily be broken by the complainants in making their lubricator. Other analogous proofs exist. We refer to these single instances only, to show the inconsistency of treating that man as an inventor, who is so discouraged by his own failures, and the repeated breaking of his bottles, that he pronounces the attempt impracticable, and is himself at that time manufacturing a different and poorer article, nearly a year and a half after the mysterious production of the close joint which the court is asked to believe was placed upon the cross-heads in 1866.

We think the presumption of the law arising from the anterior patent of the complainants, is consonant with the inference of the fact to be drawn from the testimony. The complainant was the first inventor of the lubricator described in his patent. The accidental making of one in 1866, by the defendant, if everything occurred precisely as he swears it did, is not invention in any sense. There can hardly be said to be a conflict of testimony in reference to the fact, that the complainants, for many months before the defendants did so, manufactured and put these articles on the market.

There may be a decree for the complainants in the usual form.